MARTHA E. CAMP et al., respondents,

*v.*

CHARLES K. KRULEWITCH, appellant.

[Decided January 19th, 1925.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

"August 12th, 1883, the Chelsea Beach Company was incorporated, and shortly thereafter acquired what is commonly known as the Chelsea tract, at Atlantic City. Thereafter it laid the tract out into streets, blocks and lots, and filed a map of the plan with the county clerk, and entered upon the sale of the lots by conveyances with reference to the lot numbers delineated on the filed map. All deeds made by it contained uniform restrictions touching the kind and location of buildings to be erected on the lots, and also touching uses to which the buildings could be devoted. The restrictions contained in the several deeds, so far as here material, were as follows:

" 'Under and subject, nevertheless, to the following covenants and conditions which are hereby made a part of the consideration under this conveyance: That no building shall at any time be erected within twenty feet of the front property line of any street or avenue, except on Atlantic avenue, nor within five feet of the side lines of said lots, except where a party may own two or more contiguous lots, then a building may be erected on any part of the lot or lots the owner thereof may desire, without regard to the intervening line or lines, provided the same is not built within five feet of the outside lines of the said lots, nor within twenty feet of the front property line thereof, and also that no building of less value than $500 shall be erected thereon. Also, under and subject to the covenants and conditions, that all dwelling-houses and boarding-houses shall be erected and set at least three feet higher than the grade of the street or avenue as now established, and also that no more than one building be built or be erected upon each lot for dwelling-house purposes, and that no privy be built within five feet of any adjoining property.'

"Then follows various restrictions touching prohibited uses.

"The restriction then concludes as follows:

" 'And it is expressly understood and agreed that the said several covenants on the part of the said party of the second part above specified shall attach to and run with the land, and it shall be lawful not only for the said The Chelsea Beach Company, and their successors and assigns, but also for the owner or owners of any lot or lots adjoining in the neighborhood of the premises hereby granted, deriving title from or through the said The Chelsea Beach Company, to institute and prosecute any proceedings at law or in equity against the person or persons violating or threatening to violate the same, it being understood, however, that this covenant is not to be enforced personally for damages against the said party of the second part, their heirs or assigns, unless he or they be the owner or owners of the said premises or of some part thereof at the time of a violation of the said covenant or of a threatened or attempted violation thereof, but the said covenant may be proceeded in for an injunction of and for a specified execution thereof against the said party of the second part, their heirs and assigns, and for damages against the party or parties violating the said covenants, or their heirs, executors or assigns, the object of these covenants being to secure the health, beauty, ornamentation and value of the premises.'

"All conveyances made by the Chelsea Beach Company prior to August 22d, 1893, contained these uniform restrictive covenants. The number of lots conveyed during that period does not definitely appear.

25

"August 22d, 1893, the Chelsea Beach Company made a conveyance of all the then unsold portion of the tract to Clement J. Adams. The restrictions contained in that conveyance were practically identical with the former restrictions except in one respect. While the covenants contained in the former conveyances of the Chelsea Beach Company by their terms exempted the lots on Atlantic avenue from the operation of the restriction touching the location of buildings on lots and the restriction forbidding more than one dwelling on a lot, the covenants in the deed to Adams extended that exemption to all lots on Arctic avenue and the territory between Arctic avenue and the thoroughfare.

"Twelve days later Adams reconveyed the land to a new corporation known as the Chelsea Land and Improvement Company, and from that time conveyances of lots have been made by that company, subject to the restrictions contained in the Chelsea Beach Company's deed to Adams.

"All of the complainants herein, as well as defendant, hold under the original the Chelsea Beach Company conveyances and covenants, and not under Adams, except complainant Scull. Part of the lot of Scull appears to be held under Adams and the remaining part under one Baake, who purchased from the Chelsea Beach Company.

"This suit seeks to enforce the restriction requiring not more than one building to be erected on a lot for dwelling-house purposes—the lots against which the enforcement of the covenant is sought are three Arctic avenue lots. These three lots are adjacent, and are held by defendant subject to the Chelsea Beach Company original covenants. Defendant, admittedly, proposes to erect on these three lots four double buildings and one single building—in all, nine buildings and nine garages, one garage for each of the buildings. It is my understanding that each of these buildings are for residences.

"Accordingly, the primary question arises whether the conveyance in 1893 by the Chelsea Beach Company to Adams of the unsold portion of its tract, which conveyance, by its terms, did not purport to subject the Arctic avenue lots to

the operation of the covenants here in question, was operative to render that covenant thereafter unenforceable against Arctic avenue lots by parties holding under the original the Chelsea Beach Company's restrictive covenants against one also holding under the same covenants.

"There can be no reasonable doubt of the adoption by the Chelsea Beach Company of what is commonly known as a general scheme for the development of its tract of land under a defined plan disclosed by its map and the uniform restrictive covenants contained in all conveyances made by that company during the first ten years of its operations. It was not until that company ceased operations by the sale to Adams of all of its unsold lots that the covenants were modified by exempting a portion of the territory in the Adams deed from the operation of some of the covenants theretofore uniformly used. Indeed, the covenants not only expressly declared that they formed a part of the consideration of the conveyances, and that they should attach to and run with the land, and that their object was to secure the health, beauty, ornamentation and value of the premises, but they also, in terms, declared that it should be the right of owners of lots adjoining in the neighborhood of the premises granted, deriving title from or through the said the Chelsea Beach Company, to prosecute proceedings at law or in equity against threatened violations of the restrictions. These are the very elements which inhere in a general development scheme for the benefit of all lot owners. The partial modification of the restrictive covenants occurred simultaneously with and in the sale of all of the lots of the original proprietor which had not been theretofore sold; obviously, that change properly cannot be said to have been any part of the development scheme of the original proprietor, since the interests of the original proprietor were by that conveyance extinguished. That modification of the plan of development must rather be regarded as the plan of the purchaser. Purchasers holding under Adams may not be privileged to enforce the restrictions here in question as to Arctic avenue lots; but the modification of the restrictions appearing in the conveyance to Adams

cannot be said to deny to the prior purchasers from the Chelsea Beach Company the right theretofore enjoyed by them to enforce *inter se* the Chelsea Beach Company restrictions. If before the conveyance to Adams this suit had been brought by the first purchasers from the Chelsea Beach Company of the lots now owned by complainants against the first purchaser of the lots now owned by defendant, their right to enforce the covenant here in question would not have been doubted. Clearly, the Adams conveyance in no way destroyed such prior rights or denied purchasers of the lots to which the rights belonged the enjoyment of the same rights or released such purchasers from the obligations of such prior restrictive covenants as against other lot owners holding under the same covenants.

"Since all the complainants—except Scull as to a part of his lot—hold under the original the Chelsea Beach Company restrictive covenants, and the defendant holds under the same covenants, I am convinced of the right of complainants to enforce against defendant the observance of those covenants unless the right has been lost through abandonment of the right.

"Certain violations of the covenants have been pointed out as evidence of their abandonment by the parties otherwise entitled to enforce them. Most of these violations relate to covenants which have no manner or relation to the covenants, the enforcement of which is now sought, and many of the violations so claimed are of extremely minor importance, such as buildings a few inches nearer the streets than the front line covenant permits, but some violations of the covenant here sought to be enforced are shown. Without undertaking an enumeration or classification of the violations claimed, I think it sufficient to say that the evidence does not justify a conclusion of anything approaching an abandonment of the general scheme either touching the covenant here in question or the other covenants.

"Nor can it properly be said that either of the complainants has acquiesced in such violations. Indeed, the few and unimportant violations appear to me more nearly to estab-

lish the potency of the covenants and their general recognition. Complainant Camp may be chargeable with notice of violations of this covenant in the block in which his lot is located to an extent that might be said to deny to him the equitable right to enforce the covenant, but that view cannot be urged as to any of the other complainants who reasonably can be said to have had no knowledge of such violations. Both acquiescence and laches creating an estoppel to deny the equitable right to enforce must be based on knowledge of violations or a duty to know of them, and it has been repeatedly recognized in this state that while it may be a duty of the original town-site proprietor to know of all violations on the entire tract and to prevent them, a similar duty does not obtain as to a single lot owner, touching violations at a distance from his lot and touching which he is not so vitally concerned.

"A decree will be advised pursuant to the prayer of the bill."

*Mr. Clarence L. Cole,* for the respondents.

*Messrs. Bourgeois & Coulomb,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 13.

*For reversal*—None.